**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAMIEN COLEMAN, | 1:07-CV-00911 LJO SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| KATHY MENDOZA-POWERS, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Fresno, after being convicted on April 23, 1990, by plea of guilty to second degree murder in violation of Cal. Penal Code § 187. See Respondent's Answer to Petition (hereinafter "Answer"), Exhibit 1. On September 4, 1990, he was sentenced to serve an indeterminate term of 15 years to life with the possibility of parole. Id. His minimum eligible parole date was September 21, 1999. See Petition, Exhibit B at 1.

On November 15, 2005, a subsequent parole suitability hearing was held before the California Board of Parole Hearings (hereinafter "Board"). Id. Petitioner participated in the

hearing and was represented by counsel. Id. At the conclusion of the hearing, the Board denied parole and deferred rehearing for five years. Id. at 46.

Petitioner then sought relief in the state courts. He filed a petition for writ of habeas corpus on August 14, 2006, in the Fresno County Superior Court. See Petition, Exhibit A. It was denied on August 24, 2006, in a reasoned opinion. Id. He then filed a habeas petition in the California Court of Appeal, Fifth Appellate District, on October 11, 2006. Id. The petition was denied on October 23, 2006. Id. Petitioner then filed a petition for review in the California Supreme Court. Id. The petition was denied without comment on January 17, 2007. Id.

Petitioner filed the instant petition for writ of habeas corpus in this Court on June 25, 2007. He challenges the 2005 decision of the Board denying parole. He contends the Board improperly accused him of being a gang member in violation of his plea agreement. He further argues the Board's denial of parole was based on unchanging circumstances of the offense thereby violating due process. Respondent filed an answer to the petition on October 1, 2007, and Petitioner filed a traverse on October 26, 2007.

**FACTUAL BACKGROUND**[1]

On August 20, 1989, at approximately 11:30 p.m., police were dispatched to the Festival Cinemas in Fresno, California, in response to a shooting. Numerous witnesses at the theater witnessed a group including the victim, Eric Hughley, yelling "Blood" during a movie. A second group where Petitioner and Darnell Senegal were sitting were yelling "Cuz" and "Crip." After the movie ended, the two groups went outside. Petitioner, an associate with the "Fig Boys," and Hughley, an associate with the "Strother Street Boys," began to fight. Petitioner was knocked to the ground by Hughley several times.

Eventually the two separated and Hughley was led to his car. Petitioner got up from the ground and Senegal handed him a small .32 caliber handgun. Petitioner then followed behind Hughley, yelled "Fig Boys," pulled out his handgun, and fired two shots at Hughley striking him once in the left side of his chest with the bullet entering the heart. Hughley collapsed a short time

---

[1] The factual background is derived from the probation officer's report. See Answer, Exhibit 3.

2

thereafter. Petitioner drove away with members of the "Fig Boys" gang.

**DISCUSSION**

I.      Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established

Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

Petitioner's claims were presented on August 14, 2006, in a petition for writ of habeas corpus to the Fresno County Superior Court. See Petition, Exhibit A. On August 24, 2006, the superior court denied the claims in a reasoned opinion. Id. Petitioner then presented those claims to the appellate court and to the California Supreme Court. Both petitions were summarily denied. Id. The California Supreme Court, by its "silent order" denying review of the superior court's decision, is presumed to have denied the claims presented for the same reasons stated in the opinion of the superior court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

II.     Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979) (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, an inmate is guaranteed the following process: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." Id. It is clear from the record these three guarantees were given. He received notice of the hearing, he was heard at the hearing and he was told why he did not qualify for parole.

"In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court held that 'revocation of *good time* does not comport with 'the minimum requirements of procedural due process,'

1 unless the findings of the prison disciplinary board are supported by *some evidence* in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (emphasis added). The Ninth Circuit has held that this same standard also extends to parole determinations. Irons v. Carey, 505 F.3d 846, 851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Irons, 505 F.3d at 851. Here, the Court must look to California law and review the record. In reviewing the record and determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Sass, 461 F.3d at 1128.

California law provides that after an inmate has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs. tit. 15, § 2402(a). The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors it has set forth in the California Code of Regulations.

To determine whether 'some evidence' supports the state court decision, the test is not whether some evidence supports the reasons cited for denying parole, "but whether some evidence indicates a parolee's release unreasonably endangers public safety." In re Lee, 143 Cal.App.4th 1400, 1408 (Cal.Ct.App.2006).

In denying parole in this case, the Board provided several reasons for its decision: 1) The

nature and gravity of the commitment offense; 2) Prior criminal record; 3) Continuing criminal behavior while incarcerated; and 4) Unfavorable psychological evaluation. See Petition, Exhibit B at 46-52. Petitioner argues there is no evidence to support the finding that he currently poses an unreasonable risk of danger to society if released, because the Board continues to use stale and unchanging factors of the commitment offense. Review of the Board's decision reveals the state court decision approving the Board's determination of unsuitability was not unreasonable.

The first factor mentioned by the Board in its decision was the commitment offense itself. Pursuant to § 2402(c)(1)(E), the Board found the motive for the crime was "incredibly trivial." See Petition, Exhibit B at 47. The motive was apparently the fact that the victim was a member of a different gang. This finding was well-supported by the evidence.

Next, under § 2402(c)(2), the Board determined Petitioner had an escalating pattern of violent criminal behavior prior to the offense. Petitioner admitted he was an associate of the "Fig Boys" gang. See Petition, Exhibit B at 11. The Board noted that, prior to the underlying conviction, he had been arrested and/or convicted for petty theft, burglary, grand theft, and carrying a switchblade prior. Id. Thus, this finding was also supported by the evidence.

Under § 2402(c)(6), the Board noted that this criminal behavior extended to Petitioner's commitment to the California Department of Corrections. He was convicted in 1999 of distribution of narcotics in prison and received a six-year consecutive sentence. Id. at 47. As to the 1999 conviction, the Probation Officer's Report stated:

> [Petitioner's] willingness to involve his mother and brother in this crime is despicable. He knew neither of them had a criminal record and yet he masterminded the situation which led to their involvement in this crime. He used their feelings for him to get them to participate in the crime with no concern for what would happen to them if they were convicted.

See Petition, Exhibit B at 48-49. In addition to the 1999 incident, he put another inmate in jeopardy by paying him ten dollars to receive a package for him, when the inmate had no idea what was in the package. Id. Also, most recently in 2003, he received a serious rules violation for participating in a riot during which a correctional officer witnessed Petitioner hitting an unidentified inmate in the upper torso despite orders for Petitioner to cease and desist. Id. at 24-25. The 2003 incident was only one of six serious rules violations Petitioner had committed

during his incarceration. Clearly, there was ample evidence to support the Board's finding that Petitioner remained a serious threat to public safety should he be released in light of his continuing criminal behavior.

Finally, the Board noted the psychological report which was not in favor of parole. Dr. Colleen Schroeder stated that Petitioner's "version of the crime doesn't match the depiction of the crime in the Probation Officer's Report" and Petitioner "has not come to terms with what he's done." Id. at 49. The psychologist found that Petitioner's "risk of harm to others is average for the parolee population." Id. at 28. She determined that "he will need to program violence-free and disciplinary-free to demonstrate the permanence of his change in his propensity for anger and violence . . . . He still has much work to do." Id.

The Board then considered various circumstances which tended to show suitability pursuant to § 2402(d). Petitioner did not have many laudatory chronos; however, he did complete several vocations and he had participated in the "CALM" therapy program. Id. at 50. Nevertheless, the Board concluded that the nature and gravity of Petitioner's offense, his lack of insight into the events, his psychological evaluation, his pattern of criminal conduct prior to imprisonment, and his continuing criminal conduct in prison were indicative of a current and serious danger to the public if released. This Court cannot conclude that the state court rejection of Petitioner's claim - that the Board's determination was not supported by some evidence - was unreasonable.

Petitioner's claim that the Board improperly relied on stale and immutable factors is plainly meritless. While it is true that in Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation," this is not the situation here. As discussed above, the Board relied heavily on Petitioner's criminal conduct while incarcerated. As recently as 2003, Petitioner participated in a violent riot. In 1999, he was convicted of narcotics trafficking while in prison in which he made the appalling decision of involving his mother and brother in his criminal activities. Petitioner has utterly failed to

demonstrate even the notion of a due process violation.

Petitioner also claims the Board violated his plea agreement by considering the nature of his commitment offense as gang-related. He claims he entered a plea in exchange for the promise that the gang enhancement charges would not be used later by the State. This claim is also without merit. The Board is charged with considering "all relevant, reliable information available to the panel" including "the base and other commitment offenses, including behavior before, during and after the crime." 15 C.C.R. § 2402(b). Moreover, the record of the change of plea hearing demonstrates Petitioner was not promised anything other than a dismissal of the gang enhancement charges. See Answer, Exhibit 14. When asked whether he was promised anything with respect to the length of his sentence he would have to serve, he responded, "No." Id., at 4:20-24.  When asked whether there were any threats, promises, or inducements made, other than the dismissal of the other charges in exchange for pleading to a second degree murder, he responded, "No." Id., at 4:25-26, 5:1-6. There is nothing in the record to support Petitioner's claim that he was promised the parole board would not consider the facts of the offense in determining parole suitability. Indeed, Petitioner's own statements at the hearing belie the claim. Therefore, the claim should be rejected.

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The Petition for Writ of Habeas Corpus be DENIED; and
2. The Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the Objections.  The Finding and

Recommendation will then be submitted to the District Court for review of the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   June 6, 2008**                          /s/ Sandra M. Snyder
                                    UNITED STATES MAGISTRATE JUDGE